The opinion of the Court was delivered by
Harper, J.
The only question made, and which it is necessary to consider in this case, is, whether a’n interlocutory judgment is a judgment within the meaning of the Act of Assembly of 1789, prescribing the order in which executors shall pay debts. We concur in the view of the law taken by the Chancellor as to the right of a surety, who has paid off a debt, to have the benefit of any security which the creditor had against his principal. But there was no final judgment, of Cox against the defendant’s intestate, at the time of the death of the latter. By the executor’s Act, the debts are to be paid in the order of priority as they existed at the time of the testator’s or intestate’s *388 death. Unless the interlocutory judgment, therefore, is to rank as a judgment within the meaning of the Act, Cox had not the security of a judgment against Wright’s estate, and complainant cannot be subrogated to that security. In giving construction to this Act, we must have reference to the law as it stood before. Before the Act, executors and administrators were bound to pay off judgments, the oldest first, in preference to bonds or simple contract debts. A judgment obtained against the executor himself, gained a preference over specialty and simple contract •debts, and was ranked as a judgment. In this respect the statute has made an alteration: in other respects it seems to have enacted the common law. Before the Statute 29, Ch. 2, it is commonly said, that, by a fiction of- law, all judgments were supposed to be judgments of the first day of the term at which they were obtained. This appears from the recital of the statute itself — “ Whereas, it hath been found mischievous that judgments in the King’s Courts at Westminster, do many times relate to the first day of the term, whereof they are entered, or to the day of return of the. original or filing the bail, and bind the defendant’s lands from that time, although, in truth, they were acknowledged, or suffered or signed in the vacation-time after the said term,” etc. In saying that a judgment has relation to the first day of the term of which they are entered, final judgment must, of course, be intended. This cannot relate to interlocutory judgments. It was never supposed, I believe, that lands were bound from the term as of which an interlocutory judgment was entered. The statute has relation only to lands, and after the passing of it, I suppose executors and administrators were still bound to regard judgments as of the first day of the term whereof they were entered, until the Statute 4 and 5 W. and M. c. 20. By that statute, which has not been adopted in this State, and which by the English Court has been construed to extend to executors and administrators as well as to lands, (see Hickey vs. Hayter, 6 T. R. 384,) judgments were required to be signed and docketed as directed by the statute of frauds ; and if this were not done, they ranked only as simple contract *389 debts. Before the Act of 1746, (7 Stat. 193,) which we have taken from the Stat. 8 and 9 W. 3, c. 11, it is plain that an executor could not have regarded an interlocutory judgment as a judgment entitled to priority over specialties and simple contracts. By the death of the testator or intestate after interlocutory and before final judgmént, the suit was at an end, and the creditor had nothing but his cause of action. That Act providing that when a defendant dies after interlocutory and before final judgment, the plaintiff may bring a stive facias against his executor or administrator, and. being silent as to the rank which the judgment shall have in the course of administration, it must have been postponed to any final judgment which had been obtained against the testator or intestate himself, if such had been obtained as of a term previous to the judgment on the scire facias. Then the Act of 1789, providing for the payment of judgments, mortgages and executions, the oldest first, must relate only to such as were before regarded as judgments against the testator or intestate, and makes no alteration as to the mode of determining the seniority. No such question can have arisen in England since the Stat. 3 and 4, W. and M., requiring judgments to be docketed ; nor do I suppose that any such could have arisen before. Judgments, whether against the testator or executor, had priority according to date ; and, if the views which I have taken be correct, according to the date of the final judgment, this being the first day of the term of which the judgment was entered. If judgment were confessed by the testator and entered up after his death, this, I suppose, would relate to the previous term. Some light might be thrown on the subject by Metcalfe’s case, 11 Co. 38. The question was, whether a writ of error lay on the judgment quod computet in an action of account. It was determined on the words of the writ of error, that the judgment spoken of must mean the final judgment. “ When a thing (whereof there are divers degrees and qualities) is indefinitely mentioned in a writ, count, or other record, the principal thing and the most worthy shall be intended,” and this was the final judgment. It is added, that it must mean not *390 only the principal judgment, but the entire judgment, when the whole matter is determined. That is, the judgment by which' the defendant is charged with the account which is the effect of his suit, and the other award is but accessary to it, as in trespass and in writ of inquiry of damages, etc., “ which are but ■awards of the Court, and are but interlocutory and not definitive.” Such is the rule with respeet to decrees of the Court of Equity. Decrees in Equity rank as judgments ; but a decree quód computet is not, for this purpose, regarded as a decree. The decree of the Chancellor must, therefore, be reversed.
Johnson and O’Neall, JJ., concurred.

Decree reversed.